OPINION OF THE COURT
Betty W. Ellerin, J.
Defendant City of New York moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint. Plaintiffs cross-move for partial summary judgment on their second cause of action in which they seek additional costs alleged to have been incurred as a result of unforeseen and unanticipated subsurface conditions encountered in the excavation of the South Branch Intercepting Sewer project.
*164 The city contends that plaintiffs are not entitled to compensation in excess of the unit price specified in the contract because the contractor bid on the basis of its own assessment of subsurface conditions and, therefore, assumed the risk of any subsurface encountered or that even if there were no such assumption, the subsurface conditions encountered should have been anticipated, and, that, in any event, the granting of additional compensation in excess of the contract price is in the discretion of the city commissioner who has elected not to approve additional compensation.
Plaintiffs argue that under section 4(b) of the contract they are entitled to recover the additional costs resulting from what they allege are unanticipated subsurface conditions that materially affected the cost of the work and that the discretion vested in the city commissioner to review and make adjustments is not absolute.
The relevant contract provisions state as follows:
“section no. 4-(examination) viewing of site and CONSIDERATION OF OTHER SOURCES OF INFORMATION
“(a) PRE-BIDDING (INVESTIGATION) VIEWING OF SITE — Bidders must carefully (examine) view the site of the proposed work, as well as its adjacent area, and seek other usual sources of information for they will be conclusively presumed to have full knowledge of any and all conditions on, about or above the site relating to or affecting in any way the performance of the work to be done under this contract which were or should have been indicated to a reasonably prudent bidder.
“(b) changed conditions — Should the Contractor encounter during the progress of the work, subsurface conditions at the site materially differing from any shown on the Contract Drawings or indicated in the specifications or such subsurface conditions as could not reasonably have been anticipated by the Contractor and were not anticipated by the City, which conditions will materially affect the cost of the work to be done under the contract, the attention of the Commissioner must be called immediately to such conditions before they are disturbed. The Commis *165 sioner shall thereupon promptly investigate the conditions. If he finds that they do so materially differ, or that they could not reasonably have been anticipated by the Contractor and were not anticipated by the City, the contract may be modified with his written approval of the Comptroller’s Chief Engineer. Any increase in costs resulting therefrom shall be subject to the Charter Administrative Code provisions relating to additional work.”
The city relies on section 4(a) to support its position that the contractor assumed the risk of altered subsurface conditions by conducting prebidding investigation. A careful reading of that section reveals that the contractor is charged with “full knowledge of any and all conditions on, about or above the site” (emphasis added). Significantly, there is no reference to conditions “below the site.” A contract prepared by the city will be construed most strongly against the city (Evelyn Bldg. Corp. v City of New York, 257 NY 501) and such contract will not be construed in an unfair and inequitable manner. (Foundation Co. v State of New York, 233 NY 177.) Since section 4(a) specifically particularizes certain areas of knowledge, and makes no reference to others, elementary rules of construction impel the conclusion that there was no intention therein to charge plaintiffs with a presumption of knowledge of all subsurface conditions. That such is, indeed, the import of section 4(a) is further emphasized by the language of section 4(b) which explicitly provides for review and adjustment for “such subsurface conditions as could not reasonably have been anticipated by the * * * City, which conditions will materially affect the cost of the work to be done under the contract”. The very inclusion of these terms in the contract precludes the city from divesting itself of responsibility for unanticipated subsurface conditions.
The specific contract provisions here present, and their construction, distinguish this situation from cases such as Wrecking Corp. of Amer. v Memorial Hosp. for Cancer & Allied Diseases (63 AD2d 615) and Depot Constr. v State of New York (19 NY2d 109) cited by the defendant city. No assumption of risk of subsurface conditions can be applied to the instant factual setting, where the contractor could not make independent borings to verify the city’s data (see *166 Foundation Co. v State of New York, 233 NY 177, 184-185, supra; County Asphalt v State of New York, 40 AD2d 26) and, where the contract itself provides a mechanism to obtain upward adjustments.
Defendant asserts that even if the changed conditions provision of section 4(b) is applicable, such section, in any event, vests sole discretion in city officials for the granting of additional compensation for unanticipated subsurface conditions and that plaintiff can have no recourse from the city’s unilateral unfavorable determination. To so construe section 4(b) would defeat the very purpose for which such provisions are included in public construction contracts. The purpose of such provisions is “to prevent bidders from adding high contingency factors to protect themselves against unusual conditions discovered while excavating, for obviously no one can ever know with certainty what will be found during subsurface operations. The article is thus expressly designed to take at least some of the gamble out of subsurface operations.” (Kaiser Inds. Corp. v United States, 340 F2d 322, 329.) The interpretation of section 4(b) urged by the city would, in effect, render the provision meaningless and give rise to an unfair and inequitable result equivalent to no recourse whatsoever. When a decision concerning the allowability of an equitable adjustment turns on the proper interpretation of contract provisions, then what is ultimately involved is a question of law. (See Kaiser Inds. Corp. v United States, supra.) Thus, the defendant’s argument that it is the ultimate authority to determine the granting of additional compensation must be rejected.
Here, plaintiff claims that the subsurface conditions, severe slope of rock formation and alleged substantial deviation from city projections on the excavation, could not have been anticipated upon review of the bid documents and inspection of the contract site. Defendant city, on the other hand, argues that plaintiff should have anticipated these conditions based on a reasonable analysis of the available data. In light of the conflicting factual assertions of the parties, whether or not the conditions found could have been anticipated from the information available is an issue which must be determined upon a trial.
*167 Accordingly, the city’s motion for summary judgment and the cross motion by plaintiff are both denied.